317-0235, People of the State of Illinois, after me, by Justin Nicosi, v. Frank McClendon, appellant by John James Durke. Mr. Durke, you may proceed. Thank you for letting me be here today. I'm excited to be here. It's an additional courtroom, isn't it? Yes, it is. It is. In 11 years I've practiced law and I've never been here, so I'm excited. And by excited, I mean nervous. Don't be nervous. Try to be nice. I'm also excited for this case. I represent Frank McClendon, who is the defendant in this case. Frank is 44 and presently resides in Centralia Correctional Center in Centralia, Illinois. He was convicted in this case of the sole charge of robbery, Class II felony, and sentenced by Judge Lyons in Peoria to 26 1⁄2 years to the Department of Corrections. And I intend today to argue how that court and those proceedings were flawed and why Frank should be afforded a new trial. The longer I've considered my brief and the arguments in this case, the more I want to weigh on the third argument that I make, which is the sentencing argument in this case. And I think that the way that these proceedings went, Mr. McClendon was denied due process and ineffective assistance of counsel. And so I'd like to start with some of the facts that would be relevant to that argument. So Frank's attorney first, the first proceeding where it comes up, Frank's attorney filed a motion to reduce bond. And Judge Lyons asked the attorneys, this is 6 to 30, right? And defense attorney said, it is. Prosecution said, yes, or said, mm-hmm. Eight days later, Frank's attorney wanted to continue the proceedings, and Frank didn't want to. And the judge wanted to emphasize how important it was that his attorney be prepared. So he said again, you realize you're facing 6 to 30 years with three years mandatory supervisory release, correct? And Frank said, yes, sir. And then right before trial, right before the jury was brought in, the judge found one more opportunity to say, I want the prosecution to admonish this defendant one more time as to the sentencing range. And the prosecution said it would be 6 to 30 years with three years mandatory supervised release. Does the prosecution admonish anybody? Yes. The prosecution and the judge both said these things at different times. We have an admonishment from the court. Oh, excuse me. The prosecution stated to the defense this would be 6 to 30 years. The judge asked the prosecution to make those remarks to the defendant, which I think is fairly common. I see it a lot. Fair enough. Judges do that. Yes, yes. Fair enough. And if you'd like to find that as a basis to reverse the conviction, I would agree with that, too. So Judge Lyons, in response to the prosecution saying it would be 6 to 30 years, then sort of questioned on the record 30 to 60, no. The prosecutor said then 6 to 30. The defense attorney then said 6 to 30. And then Judge Lyons said 6 to 30, yes. Then they bring in the jury. And well, actually, actually, before they bring in the jury, there's a continued conversation with the judge. And the judge talks to Frank and says, you realize that this is a Class II, and based on prior Class II felonies, this is elevated to Class X sentencing. And it's sentencable, nonprobationable to no less than 6 years, but not more than 30 years at a day-for-day rate with any sort of questions. With a 60. And then he looks at the prosecutor, I'm guessing, and says, is it extended? And the prosecutor again responded, no. 30 would be the maximum. Frank responded that he understood and said, yes, sir. The jury was brought in, and without getting into the facts, he was convicted of the charge. Months later, at the sentencing hearing, Judge Lyons asked the prosecutor to outline the parameters of what the sentencing range was. And the prosecutor said, Judge, the sentencing range in this case is 6 to 60 years. This is a Class II, and he has two prior Class IIs, which make it a Class X, and then a Class X would make it extendable. So it's 6 to 60, and day-for-day would apply. The defendant's attorney objected to this range, saying that the defendant was previously admonished in open court otherwise. The judge responded that this is a computational matter. It's up to DOC. The prosecution can't change it even if they wanted to. To which the defense attorney said he persisted in his objection and said, my client didn't know he was facing 6 to 60 years when he went to trial. And the court asked, well, how? What did the trial court say? It's a computational matter? Yes. And that it's up to whom? Department of Corrections. Do you agree with that? No. No, I don't. And I think the defense attorney appropriately persisted in his objection. To which the court said, well, how could it be that he wasn't advised of this? Did you tell him? And the defense attorney said, no. I told him it was 6 to 30. That's the conversation I ever had with the prosecutors. That's all we've ever said, 6 to 30. So Frank got his opportunity of allocution in this case, and he responded with the exact same objection. He said, I never knew this was 6 to 60. I understand that you have to sentence me here, but I never knew about this. And the judge responds, asking, so you think they've done something wrong? And Frank says, I think everybody in here done something wrong. And in so many words, that's exactly what I'm saying. Regardless, he was sentenced under the sentencing range of 6 to 60 to 26 and a half years. So my argument is that these mistakes taint every stage of the proceedings. Appellant counsel admits that he was improperly admonished to 6 to 30 when he perhaps should have been admonished to 6 to 60. This is why when the admonishments are made. What are the stages of the proceedings that you say are tainted? You said every stage. Yes. So whether he's deciding to hire counsel, how to plead, whether he pleads guilty. Let's go slowly through that. If he's going to decide to hire counsel, the gravity of the offense would factor into whether he could gather the resources to do so. Whether or not he's going to plead not guilty at the... Does he have private counsel? No. No, he doesn't. So in this case... In this case, it wouldn't taint that decision, perhaps. But perhaps he has a grandmother who said, oh, 60 years, you know, that's a big... Of course I'm being... Yes. But the thing is, if there were any negotiated sentence, if there were any negotiations, those are the proceedings that I think are tainted. Okay. Because the sentencing rate certainly would factor into whether or not he would accept a certain sentence because the risk at trial would be different than he thought it was. Well, it sounds like, doesn't it, at this stage when there's usually negotiations and offers made and the orders accepted or rejected, that the prosecutors would probably want to have this right, wouldn't they? I think they would. Doesn't it give them more leverage to get a plea and not have to bother with trial if they knew that it was how many years? Well, if they knew it was 6 to 60, yeah, they would want to have it right. And they wouldn't want it to be appealed either. Because it would give them more leverage, wouldn't it, if upon conviction it's going to be how many more years? I don't know what the prosecutor insisted it was during the proceedings. They said it was how many years? Well, the prosecutor ultimately said it was 6 to 60. Ultimately. We don't care about ultimately. We're at this stage of right now. Oh, prior to sentencing, the prosecutor said it was 6 to 30 years. Yeah. Don't you think adding 30 more years gives more leverage? To the prosecutor's position, yes. Yeah. Yes, it does. Okay. But this court has ruled that the defense has denied effective assistance of counsel where the sentencing range would have even been higher. Because he may not have taken that gamble if he'd have known that the range was 6 to 60 instead of 6 to 30, which I will get to. Okay. That issue wasn't preserved in the trial court in a post-trial motion, correct? No post-trial motion was filed. The objection was made at the time. Right. But you had to preserve the issue in the post-trial motion. And was it preserved? No post-trial motion was filed as to sentencing. So it's a sentencing error, and I think we automatically reviewed that for plain error. But even though it wasn't properly preserved. Sure. And plain error has two prongs, whether the evidence was closely balanced or whether it's such a fundamental error that it threatens justice. Yes. Which category do you think was considered? The second. I believe that the Owens case that we cite states that this is the right is that all sentencing issues are of a right that are so substantial that they can be reviewed without being preserved in a post-trial motion. The difficulty I have with your argument is that actually the sentence that was articulated at the bond hearing and in the arraignment was 30 years. Correct. And so if your client received 40 years, there's prejudice there, or there is apparent prejudice or arguable prejudice. Here the sentence imposed was within the incorrect range, and I don't see any prejudice or substantial denial of justice. Well, what I'm saying is that if he'd have known, it would have been 60 years. And, in fact, if you read the statute, it's 30 to 60 years, not 6 to 60 years. Had he known that, he might have pled guilty to a plea agreement that would have, to a plea offer that would have been made. We know that offers were made. It's stated on the record that they were. It's not stated what they were. If all the offers were under 30 years, that weakens your argument. It weakens it, but if he knows that all he's, or if he knows that he's facing more than 30 years, he can elect to gamble on a 6 to 30 instead of gamble on a 6 to 60. Isn't this more akin to relief that you could obtain in a post-conviction setting where matters that are not apparent of record could be brought to the attention of the court in a post-conviction petition? Because we're speculating whether there were offers and what those offers might have been. Well, and that's why I think that a Krankles hearing should be held, because the defendant made this objection in allocution. And the trial court, the trial judge should have stopped the proceeding, appointed him new counsel, and there should have been a hearing on what offers were made and what communications were made to the defendant about any plea agreements. What's the purpose of a Krankles hearing, in your perspective, if this were to be held? I mean, if it were held at that time? To investigate whether there was effective substance of counsel. That's the purpose of it, but what is the effect of it? A finding of what by the trial court at the hearing? What are the potential findings the trial court could make? Well, then I'd argue that the trial court should vacate the judgment of conviction and readmonish the defendant as to the proper sentencing range so that he can make an informed, knowing decision on whether or not to accept. So if that were the finding, the purpose of that, of a Krankles hearing, is for judicial economy and efficiency, as opposed to waiting through the appellate process and then ultimately, what Justice Wright suggests, going to a post-conviction relief. Sure, I think it is more economic. I mean, what are we talking, years here? I mean, if upon proper ordering of a Krankles hearing, if the relief that you're seeking is found in a Krankles hearing, then your trial is held, correct? Unless he was to accept a plea agreement, sure. Well, yeah, we go back to beginning stage one of your stages of the proceedings. Yes. Which is much more efficient of court's time than going through this appellate process, post-conviction process. Yeah, I agree with that. That's really the purpose of a Krankles hearing. Yes, yes, and I think that the defendant articulated ineffective assistance of counsel in his comments. To warrant a Krankles hearing for the judge to make a finding. Either way, and if not favorable, obviously, appealable. Sure, yes, yes. Two minutes, please. Thank you. So in People v. Owens, I cite in my trial brief, it cites another case, People v. Brooks. Both are First District cases. Brooks was not cited in my brief, but it's a direct quotation from Brooks that the Owens case uses, which states that even if a sentence is imposed under a wrong sentencing range, even if the sentence imposed under a wrong sentencing range fits within a correct sentencing range, the sentence must be vacated due to the trial court's reliance on the wrong sentencing range in imposing the sentence. I think the importance here is that the court relies on a sentencing range, and that that's not clear from the statute. The court first relies on a range and then imposes a sentence. The statute itself just says the court shall impose a sentence. But these courts have found that courts rely on sentencing ranges, and if it relies on the wrong one, even if it's consistent with the right one, it needs to be vacated and resentenced. People v. Brooks was a similar situation. I'd also note for the court I cited in my brief, People v. Blomart. That was this Court's decision. I believe it was a 1992 case, a post-conviction petition, which clearly said that the court or that failure to properly advise one's client as to possible sentencing ranges for alleged crimes falls below the objective standard of reasonableness.  The defendant was charged with murder. The defendant's attorney said you could be out on parole within a year, you could be released within two or three years, and you'd get work release while you're in DOC. And a conviction for murder, well, and so the fact was that the minimum sentence was 20 years. She couldn't be released for 10 years and no work release. The court did not, the court cited the ABA standards, which are similar to what I just said, but the court did not investigate further as to whether there was actual prejudice. That was it. It was essentially prejudice per se. And those two prongs of Strickland v. Washington were met. And I'm saying that Strickland v. Washington applies here. I'm saying this is an effective assistance of counsel, but I'm also making an argument that's not supported by the cases, but I think this Court should consider, which is this is a violation of due process. Every part of the process here is tainted. It is by definition of the words a violation of due process. At every stage, he did not make a knowing and intelligent decision as to whether to go to trial. And Judge Lyons knew this. That's why he admonished him right before trial. Do you know the sentencing range? That's why he admonished him when he didn't want a continuance. Do you know what you're up against? This is important. And he did not make a knowing decision in any of those circumstances. So I'd ask the Court to vacate the conviction and remand it to the trial court for a new trial. Thank you. Mr. Nicolosi. Thank you, Your Honors. Good afternoon. May it please the Court, counsel. Your Honors, Justice Wright, you hit it on the head, I believe, talking about prejudice. Of course, this issue was forfeited. We're getting into discussing plain error, and the State submits that it can't see how the defendant in this case was prejudiced in any way in the effect of substantially tarnishing the proceedings in this case. The defendant professes innocence the whole way, and the State would even note that the defendant even professes innocence at sentencing. And, therefore, it's pretty clear, based on this record, that the defendant wanted to proceed with a trial. He thought, and everybody thought up until sentencing, he was looking at 6 to 30. He thought he could receive a sentence of 30. He went to sentencing, and what did he receive? Twenty-six and a half, or 26. I think it was confusing. Do you think that decision changes? If you know you're facing 60 years, that his decision prior to trial may have been different? That's certainly possible. It calls for a lot of speculation. But the fact is this defendant thought he could get upwards of 30, and he proceeded in the manner he did. And it turns out, lo and behold, after sentencing, he got between 6 and 30. In other words, the ultimate sentence he received wasn't any shock to his system, based on what he went into that sentencing hearing expecting. Do you have a case to support that? No. Pardon? I don't have a case to support that. Okay. What about the Crankle hearing? I mean, just virtue of the fact that his counsel gave him clearly the wrong sentencing range and didn't seem to know what it was, do you think that raising that is enough to trigger a Crankle hearing? No, Your Honor. The state cites people versus heirs in the brief. In that case, in a post-trial motion, the defendant just used the phrase, literally just the phrase, ineffective assistance of counsel in his motion. And the court in that case said that was insufficient to warrant a Crankle inquiry. That just wasn't a clear enough invocation of that type of complaint. This case, we have even less than that. All he said is everybody in here done something wrong. That's all he said. That's clearly less than existed in heirs. It's insufficient in heirs. It's got to be insufficient. In this case, even if that's the case, the State would submit that a Crankle inquiry is unnecessary in this case because they actually discussed this very ‑‑ the substance of this issue below. Defense counsel objected to the new proper sentencing range. And the parties discussed this. And the trial court, the sentencing court, clearly kind of overruled that objection and decided that they were going to proceed with sentencing. So if that's ‑‑ that hadn't been the case, that's in the record. The sentencing court basically said, by ruling the way he did, that it was not that counsel wasn't ineffective. Because if this was a significant problem, the court would not have proceeded with sentencing as he did. So I think in this particular case, all of the substance ‑‑ Do you think that that could be somewhat affected by the fact that the judge didn't seem to know what the sentencing range was? And it's his, you know, job to give the proper admonition? You know, in this case, he deferred to the State. But that really isn't the role of the State. Or, you know, it's the role of the judge to give the proper admonitions to a defense. So do you think that maybe the trial judge's sort of glossing over, if you will, of any ineffective assistance might have been couched in sort of, you know, the whole situation, the fact that he gave the 6 to 30 on at least three separate occasions up until the jury was brought in? Well, Your Honor, that's certainly possible. You know, the trial court didn't discuss a crankle issue. He didn't discuss counsel's performance of the case. So I'm just kind of speculating, but not really speculating. I'm arguing that based on the fact that the trial court discussed the merits, the substance of the issue in this case, not the overriding ineffective assistance part of it, but the substance of it. Because he dealt with the substance of it and decided that there was no harm or error and decided to move on with sentencing anyway, that kind of takes care of the ineffective assistance part of it as well. If there's no substance, you know, to the argument, if there's no merit to that, to the substance, how could counsel be effective in relation to that same substance, I guess is kind of the way I argue that in my brief. Did the trial court cure the error in the record by the prosecutor and the defense counsel by proposing a sentence that was less than 30? Your Honor, the people would submit that, yes, that did cure the error, as you argued during Mr. Durkee's argument, and not argued but stated during Mr. Durkee's argument, as I argued in my brief, that there was no prejudice here because he was sentenced to a sentence, a term of years within the range that he expected. If the defendant's complaint came in elocution before the sentence was imposed, how do we know that Judge Lyons wasn't thinking about a 50-year sentence after the defendant spoke? But once the defendant said everybody, including you, Judge, has made a mistake, we could speculate that maybe the sentence imposed was less than the judge would have given. It's certainly possible, but obviously if he would have sentenced him to 50, that would be a bigger can of worms, as they say, and that would be a different circumstance than what we have here. I wouldn't be able to make the argument that I have here that there was no prejudice. Can you address the argument that if there is a misstatement of the range of punishment at the initial arraignment, which is often waived anyway, or at a bond hearing, everything that follows is avoidable? Your Honor, I can't contest it that this was an error and this wasn't in some way significant at perhaps multiple stages of this process, certainly maybe in the defendant's mind itself. But the fact of the matter is I think we can look at this in its totality because it is a completed process here. The defendant chose this process thinking he was going to get 6 to 30. He ended up getting 6 to 30. And I think because this – that's clearly what he wanted. He wanted to go to trial knowing he was going to get 6 to 30, clearly. And that's what he ended up getting. And the State just admits that, especially given the fact that he forfeited, this isn't the type of substantial error that tarnished every single stage of the proceedings because, again, the defendant ended up receiving what he – basically what he wanted, what he chose, the path he chose. What? He wanted to be sentenced? Well, he wanted to go to trial. No, of course not, Your Honor. He wanted to go to trial and he expected to get 6 to 30. That's the path he chose. It was up to him every way, every stage going forward, how to proceed. And this is what he chose to do. Your Honor, you asked me before we got into the crankle about if there was a case that supported the argument that I was making. I just wanted to distinguish this case from Owens. The case – I discuss Owens pretty thoroughly in my brief. Counsel mentions it in his brief. But this is different than Owens because in Owens, the trial court, the sentencing court, acknowledged that the sentencing range that defendant had been admonished about was incorrect. But they proceeded to sentencing and the trial court proceeded to sentencing within that incorrect range. That's not what we have here. In this case, the defendant was sentenced under the 6 to 60 range, the proper range, and it just so happened that the sentence ended up being in incorrect range, which was within what defendant expected. So I just wanted to distinguish this case from Owens because they are factually different. Yeah, with that, that's all I have. The State would request that this Court affirm the rulings below. If there are any other questions, I'd be happy to answer them. Thank you. Thank you, Mr. Nicolosi. Mr. Durfee for Repado. Very briefly, thank you, Your Honor. Counsel, just a few matters that counsel noted. The People v. Ayers case involved a defendant filing a pro se motion, and it had basically four words, ineffective assistance of counsel. And the issue was, is this enough to trigger a crankle hearing? So in that case, they did find it was enough to trigger a hearing. But this case is a little bit different than Ayers because in this case, the ineffective assistance of counsel is clear. It is clearly admitted on the record. Not only is there the defendant saying more than just everybody done something wrong here, he actually makes another statement just a few moments later saying the prosecutors, my lawyers, and even you asked what I was facing. Everybody said 6 to 30. So he does make a complaint specifically about his lawyers. However, it's clear to the judge when he asks, is that what you told him? And the defense counsel says, I told him 6 to 30. So the ineffective assistance of counsel is so clear that Ayers is somewhat inapplicable. I think that Ayers does stand for the proposition that even a small amount of the Owens case, counsel is correct that. What would the crankle hearing have disclosed? Potential. We have the record. But we don't have. The crankle hearing would have uncovered and that is, yes, judge, I told him that. I made a mistake. It would have disclosed what offers were made between the parties, what offers were rejected, negotiations. Well, can't we infer there was no offer above 30 years? Because nobody knew that the sentence could have been more than 30 years? I think that's fair. But the defendant couldn't knowingly and intelligently reject an offer without knowing the correct sentencing range. Okay. So the Owens case defense is, excuse me, counsel is correct about stating that he was sentenced within the probable range in this case and not in that case. But I still, I don't think you can deny the language in that case, which I don't mean to be too repetitive. But even if a sentence imposed under a wrong sentencing range fits within the correct sentencing range, the sentence must be vacated due to the trial court's reliance on the wrong sentencing range. With that, if there's any other questions. Before you conclude, I know you were nervous here today. And I looked at the brief. I noticed you filed your brief nine months ago. Yes. And counsel filed his eight months ago. You both did a really nice job of arguing a case law that you probably haven't read in the last eight or nine months. Thank you. I will remember that. Thank you. Thank you both for your arguments here today. This matter will be taken under advisement and a written decision will be issued to you as soon as possible.